IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Dow Jones & Company, Inc.,    :
             :
    Plaintiff,    :
             :
    v.     :  CIVIL ACTION NO. 22-CV-1070
             :
Nic.kl, Inc.,      :
             :
    Defendant.   :
             :

## COMPLAINT AND JURY DEMAND

Plaintiff Dow Jones & Company, Inc., ("Dow Jones") by and through its undersigned counsel, complains against Defendant Nic.kl, Inc. ("Defendant" or "NICKLpass"), and alleges as follows:

## PRELIMINARY STATEMENT

1. Dow Jones is a news publisher whose flagship publication is *The Wall Street Journal*. Dow Jones dedicates considerable resources to investigating, reporting, and publishing reliable, well-researched news and relies in large part on subscription revenue to underwrite the significant costs of its original, high-quality journalism.

2. Access to the full text of *Wall Street Journal* articles on the WSJ.com website is generally limited to subscribers, primarily by use of a paywall designed to ensure that only Dow Jones's authorized users with proper login credentials may access the *Journal*'s exclusive content. Nearly three million people worldwide subscribe to the digital edition of *The Wall Street Journal* and pay Dow Jones fair value for the right to access the wealth of content on WSJ.com.

3. Defendant, however, actively undermines the business model that sustains Dow Jones's high-quality journalism by engaging in commercialized password sharing on an industrial scale, at Dow Jones's expense and for the benefit of its own bottom line.

4.      Indeed, Defendant's business model appears to be predicated on trafficking in passwords and circumventing or bypassing access control measures, including the WSJ.com subscriber paywall, so as to obtain and distribute unauthorized access to copyrighted content.

5.      Defendant has created at least eighteen individual subscription accounts for WSJ.com, for which it pays standard consumer prices, and then shuffles the login credentials associated with those eighteen accounts among Defendant's hundreds or thousands of commercial, paying customers. Defendant pockets the difference between the small number of WSJ.com subscription accounts that it pays for, and the large number of commercial users who pay Defendant for WSJ.com access.

6.      As a result of Defendant's illicit activities, Dow Jones's copyright-protected articles were accessed, reproduced, and displayed without authorization, and Dow Jones's copyright access protections bypassed at least 19,330 times.

7.      Defendant publicly proclaims and falsely causes others to believe that it is authorized to sell that access to Dow Jones's publications, and that Dow Jones has approved such activities.  Moreover, Dow Jones previously demanded that Defendant stop offering access to Dow Jones's publications, and although Defendant committed to stop, recent review of its website and marketing materials reveal that it continues to offer unauthorized access to *The Wall Street Journal* to the present day.

8.      Even more brazenly, within the past month, Defendant's chief executive officer and its chief business officer attempted to coax Dow Jones to enter into a licensing agreement with Defendant, without even referencing Dow Jones's pending dispute, thereby demonstrating that Defendant fully understands the importance of licensing the very content it has instead stolen from Dow Jones.

9.      Consequently, Dow Jones is forced to bring this action to hold Defendant accountable for its trafficking in circumvention of access control devices, breach of contract, trademark infringement, trademark dilution, false advertising, unfair competition, and unjust enrichment, all arising from Defendant's willful, knowing, and unlawful attempts to capitalize on and profit from Dow Jones's business and reputation by selling unauthorized access to *The Wall Street Journal* and Dow Jones's other publications.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1332(a) and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

11.      Defendant is subject to this Court's general jurisdiction over it because it resides and is at home in this Commonwealth and judicial district, where it has its principal place of business.  Defendant is also subject to specific personal jurisdiction in this Court for the claims asserted against it in this action because Defendant knowingly and intentionally transacted business in this Commonwealth from which the claims in suit arise, and because Defendant knowingly and intentionally committed the tortious acts in question in and from this state.

12.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Defendant resides in this district and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.  Venue also is proper under 28 U.S.C. § 1400(a) because Defendant or its agents may be found in this District.

## PARTIES

13.      Plaintiff Dow Jones & Company, Inc. is a Delaware corporation with its primary place of business at 1211 Avenue of the Americas, New York, New York, 10036.

14.      On information and belief, Defendant Nic.kl, Inc. is a Delaware corporation with

its primary place of business at 2020 Walnut Street, Apt 24B, Philadelphia, PA, 19103, and also has a place of business at 1800 Arch St., 4th Floor, Philadelphia, Pennsylvania, 19103.

## FACTS

### A.  The Business of Dow Jones

15.     Dow Jones has a long and distinguished history of reporting news and business information.  In 1882, Charles Dow, Edward Jones and Charles Bergstresser founded the company that would eventually be known as Dow Jones & Company, Inc.

16.     Dow Jones currently employs one of the world's largest teams of journalists and has long been a worldwide leader in financial journalism through its many highly respected publications.

17.     Founded in 1889, *The Wall Street Journal* is one of the largest national daily newspapers in the United States, with a digital circulation of nearly three million subscribers.

18.     Dow Jones is the owner of several incontestable federally registered marks, which marks are so well known as to be household names in the United States, including THE WALL STREET JOURNAL® and WSJ®.

19.     Dow Jones also publishes a variety of acclaimed publications and websites and operates Dow Jones Newswires, which provides real-time business news and information to hundreds of thousands of financial professionals around the world.

20.     Dow Jones relies on the ability to charge readers for its news for its continued existence.  Without control over the distribution of its content, Dow Jones could not maintain its worldwide network of news bureaus and highly skilled professional journalists, which requires substantial investments of time and money.

21.     With only a few carefully chosen exceptions, Dow Jones serves as the exclusive distributor of its original news content. It authorizes only a select small number of third parties to

distribute its content for a fee commensurate with its value.

22.     Dow Jones's vigilant oversight of the channels by which its content is distributed adds significant value to Dow Jones's products and services, which in turn supports Dow Jones's continuing ability to investigate, report, and publish the news with a high level of excellence.

23.     *The Wall Street Journal*'s online presence, WSJ.com, has one of the largest paid subscriber bases of any news site on the Internet.

24.     Access to much of the copyright-protected content stored on the computer systems that host the WSJ.com website is restricted, including through paywalls designed to restrict the access to, display of, and reproduction of such content only to authorized users with proper login credentials.

25.     The unauthorized access to Dow Jones's original and copyrighted content undermines Dow Jones's business model and injures Dow Jones irreparably.

**B.  Defendant's Business**

26.     Defendant promotes and markets its NICKLpass service as providing its customers access to "premium news from one place," "using our handy browser extension or mobile app."

27.     Defendant's primary value propositions to its user base are that its NICKLpass service allows users to (1) pay NICKLpass instead of publishers, so that they can "Save up to 70% on premium content," and (2) avoid publisher paywalls.

28.     On information and belief, since the initial roll-out of its business, dating back at least to August 2019, Defendant has engaged in unauthorized access to and advertised that it provides access and avoids the paywalls that effectively regulate access to Dow Jones's copyright-protected property and protected computer systems.

29.     For example, in one of the earliest still publicly accessible archived versions of its

websites, Defendant prominently displayed a collection of images demonstrating its service's ability to bypass *The Wall Street Journal*'s paywall, as depicted in the below image of the NICKLpass website archived by the Internet Archive on May 18, 2020:



30.     On information and belief, Defendant's NICKLpass platform was formally launched and began generating revenues in or about July 2020, although it had been offered, made available, and provided to others before then.

31.     On information and belief, a substantial portion of Defendant's unlawful commercial activities, including its marketing and sales activities, are perpetrated from within this judicial district, and Defendant also receives a substantial portion of its revenues related to its infringing and other unlawful activities in this Commonwealth and this judicial district.

32.     Below are examples from a slide presentation Defendant created and distributed via a marketing email that demonstrate the mechanism by which it permits users to access WSJ.com content without paying for a subscription to *The Wall Street Journal*:



33.     Defendant also clearly markets and promotes that its NICKLpass platform enables others to access Dow Jones's protected content without Dow Jones's authorization.

34.     For example, in a video-recorded demonstration that Defendant e-mailed to prospective customers via a website link in late 2021, and that is still available at that same link

for viewing as of the date of this Complaint,[1] Defendant admits that when a user visits the website for *The Wall Street Journal* and is "looking to read the contents of [its] article[s]," the user is "met with a content blocker, or you may call them paywalls."

35.     Defendant's video ad, however, promotes that "with NICKLpass you're able to very quickly and easily garner access to any of the publications" that Defendant's customers pay Defendant to access, but that those customers would otherwise be required to pay publishers, such as Dow Jones, to access.

36.     In the video, a person who, on information and belief, is Defendant's former Sales Advisor, appears in the bottom left corner. On information and belief, in the video that person performs and talks through a live demonstration of the NICKLpass system for potential customers, showing the NICKLpass system bypassing an access control mechanism on *The Wall Street Journal* website. Still images excerpted from the video are reproduced below.

37.     At 43 seconds after the start of the video, the demonstration of the NICKLpass system depicts how Dow Jones's paywall would prevent an individual who is not a subscriber to *The Wall Street Journal* from accessing the full text of an article on WSJ.com:

---

[1] The full video is available to view at the following URL:
https://www.loom.com/share/441f7c6629ca4fad9ef23030f6e6ccc6.



38.     At 1 minute and 13 seconds after the start of the video, the demonstration of the NICKLpass system depicts how a customer of Defendant can use the NICKLpass system to access that same article on WSJ.com without acquiring their own subscription to *The Wall Street Journal*. In doing so, the NICKLpass system itself not only admits, but proudly proclaims, that it causes users to "get . . . beyond the paywalls."



39.     Finally, at 1 minute and 24 seconds after the start of the video, the demonstration of the NICKLpass system depicts how a customer of Defendant would gain access to the full text of that same article on WSJ.com without acquiring their own subscription to *The Wall Street Journal*:



40.     In its marketing materials, including in the above-referenced video recording, Defendant admits that its "system" enables its users access to Dow Jones's protected data "very quickly," because with NICKLpass there "is no more paywall and [users are] able to read through the contents of" otherwise password-protected and copyrighted articles.

41.     Defendant has never been authorized by Dow Jones to bypass any of Dow Jones's access control mechanisms, to provide access to any Dow Jones publication or other copyrighted material.  Nor has Dow Jones ever authorized Defendant to allow, encourage, or cause others to do so.

42.     In short, Defendant's entire business model appears to be predicated on engaging in and encouraging others to circumvent, or it itself bypassing, access control measures so as to obtain unauthorized access to copyrighted content stored on otherwise access-restricted computers, including those that store *The Wall Street Journal*.

43.     After Dow Jones learned of Defendant's activities, it contacted Defendant in September 2020 and demanded that Defendant cease its unlawful acts.  In response, Defendant admitted that it had provided others with unauthorized access to Dow Jones's computer systems – "specifically the Wall Street Journal" – including by trafficking in access control bypass software.

44.     Although Defendant claimed that it would comply with Dow Jones's demands, to this day it continues its unlawful activity in willful and reckless disregard of Dow Jones's rights.

45.     Defendant has continued to falsely promote and advertise to its prospective customers—which, upon information and belief, include Dow Jones's existing or prospective customers—that Defendant's commercial activities are approved by Dow Jones, and that it is authorized to provide access to Dow Jones's copyright-protected content.

46.     Further compounding Defendant's duplicitous course of dealing with Dow Jones, within the past month, Defendant's chief executive officer and chief business officer attempted to persuade Dow Jones to enter into a licensing agreement that would allow Defendant to offer its customers legitimate access to WSJ.com. What Defendant's pitch deliberately elided was the fact that Defendant had already been providing Dow Jones content to its commercial customers *without* a license. This was no mere miscommunication; Defendant's chief executive officer was the initial recipient of Dow Jones's 2020 cease and desist notice, and the same chief executive officer nonetheless sought to convince members of Dow Jones's business partnership team that Defendant could be entrusted with the power to disseminate Dow Jones's valuable intellectual property.

47.     As a result of Defendant's illicit activities, without authorization, Dow Jones's protected computer systems and copyright-protected articles were accessed, reproduced, and

displayed, and copyright access protections bypassed, at least 19,330 times.

48.     As a result of Defendant's activities, on information and belief, existing Dow Jones customers were induced by Defendant to terminate their subscriptions to *The Wall Street Journal* and other Dow Jones publications and thereby to end their contractual relationships with Dow Jones, while prospective customers did not enter into agreements with Dow Jones that they otherwise would have. Instead, these actual and prospective customers subscribed to Defendant's service, which illicitly bypasses Dow Jones's effective access control mechanisms in order to provide its users with Dow Jones's copyright-protected property.

49.     On information and belief, Defendant has enriched itself significantly and unjustly at Dow Jones's expense.

**FIRST CLAIM FOR RELIEF**
**CIRCUMVENTING TECHNOLOGICAL CONTROL MEASURES & TRAFFICKING**
**IN ANTI-CIRCUMVENTION DEVICES IN VIOLATION OF THE DMCA**

50.     Dow Jones incorporates and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

51.     The works accessible through Dow Jones's electronic edition of *The Wall Street Journal* are copyrighted works.

52.     Dow Jones has incorporated into its electronic platforms, including WSJ.com, mobile apps, and other platforms, various technological measures, including password-protection and paywalls, that effectively control access to its copyrighted works.

53.     Dow Jones details the terms and conditions for use of the content appearing on the online edition of *The Wall Street Journal* in the WSJ.com Subscriber Agreement and Terms of Use, which restrict use and redistribution of Dow Jones's copyrighted content.

54.     Defendant uses, manufactures, imports, offers to the public, provides, or otherwise traffics in products and services, including the NICKLpass platform or components

13

thereof, including a mobile app and Chrome extension that, on information and belief, are comprised of or contain technologies, products, services, devices, components, or parts thereof that primarily are designed or produced for the purpose of circumventing technological measures that effectively control access to copyrighted works and that protect the exclusive rights of a copyright owner, including at least the paywall feature of those Dow Jones computers that host electronic versions of *The Wall Street Journal*.

55.     Defendant uses, manufactures, imports, offers to the public, provides, or otherwise traffics in products and services, including the NICKLpass platform or components thereof, including a mobile app and Chrome extension that, on information and belief, have little or no commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a copyrighted work and that protects the exclusive rights of a copyright owner, including at least the paywall feature of those Dow Jones computers that host electronic versions of *The Wall Street Journal*.

56.     Defendant uses, manufactures, imports, offers to the public, provides, or otherwise traffics in products and services, including the NICKLpass platform or components thereof, including a mobile app and Chrome extension that, on information and belief, it markets with knowledge of its use to circumvent technological access controls and that protects the exclusive rights of a copyright owner, including at least the paywall feature of those Dow Jones computers that host electronic versions of *The Wall Street Journal*.

57.     Defendant's conduct is in violation of Dow Jones's rights under the Digital Millennium Copyright Act, including at least 17 U.S.C. §§ 1201(a)(1)(A), 1201(a)(2), and 1201(b)(1).

58.     Defendant's conduct has been willful and in reckless disregard of Dow Jones's

14

rights.

59.     Pursuant to 17 U.S.C. § 1203, Dow Jones is entitled to recover from Defendant the profits that Defendant obtained through its violations, as Dow Jones's damages, and/or, at Dow Jones's election, statutory damages for each violation, along with attorney's fees and costs.

60.     Defendant's violations have caused, and, unless restrained by this Court, will continue to cause, irreparable injury to Dow Jones not fully compensable in monetary damages.

## SECOND CLAIM FOR RELIEF
## BREACH OF CONTRACT

61.     Dow Jones incorporates and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

62.     Dow Jones carefully regulates by contract the terms on which persons may electronically access, use, and redistribute its copyrighted content.

63.     Users of the online edition of *The Wall Street Journal* and other Dow Jones websites must agree to, and are bound by, the Dow Jones Terms of Use.

64.     On information and belief, in order to obtain access to Dow Jones's content, Defendant or its agents or representatives acting at Defendant's direction either accepted and became a party to the Dow Jones Terms of Use, and/or induced other persons to access Dow Jones websites and provide Defendant with Dow Jones's content in violation of the Dow Jones Terms of Use.

65.     The Dow Jones Terms of Use constitute a valid and enforceable contract.

66.     The Dow Jones Terms of Use provide that "[o]nly one individual may access a Service at the same time using the same user name or password, unless we agree otherwise."

67.     On information and belief, Defendant allowed for and caused more than one individual to access Dow Jones's services using the same user name or password at the same

time and without Dow Jones's permission to do so.  In fact, Defendant prominently advertises that this is one of the supposed benefits of its NICKLpass service.

68.     The Dow Jones Terms of Use provide that "[u]nless you have our written consent, you may not use, sell, publish, distribute, retransmit or otherwise provide access to the Content," with exceptions not applicable here.

69.     On information and belief, Defendant used, sold, published, distributed, retransmitted or otherwise provided access to Dow Jones's content on numerous occasions for its own commercial purposes and without Dow Jones's permission or a license to do so.

70.     The Dow Jones Terms of Use further provide that "you may not use the Content . . . in any commercial product or service, without our express written consent."

71.     Defendant used the Dow Jones content in commercial products or services without Dow Jones's permission or a license to do so.

72.     The Dow Jones Terms of Use provide that "[y]ou may not create apps, extensions, or other products and services that use our Content without our permission.  You may not aggregate or otherwise use our Content in a manner that could reasonably serve as a substitute for a subscription to a Service."

73.     Defendant created apps, extensions, or other products and services that use Dow Jones's content, and aggregate or otherwise use such content in a manner that could reasonably substitute for a subscription to Dow Jones's services, without Dow Jones's permission.

74.     The Dow Jones Terms of Use provide that "You may not access or view the Services with the use of any scripts, extensions, or programs that alter the way the Services are displayed, rendered, or transmitted to you without our written consent."

75.     Defendant accessed or viewed the Services with scripts, extensions, or programs

16

that alter the way the Dow Jones services are displayed, rendered, or transmitted, without Dow Jones's permission.

76.     Defendant's breaches have caused Dow Jones significant damage, not all of which is readily calculable.

## THIRD CLAIM FOR RELIEF
## FEDERAL TRADEMARK INFRINGEMENT (LANHAM ACT SECTION 32)

77.     Dow Jones incorporates and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

78.     Dow Jones is the owner of the marks THE WALL STREET JOURNAL® and WSJ®, as represented by the various incontestable federal registrations attached herewith, among others, which conclusively evidence Dow Jones's exclusive rights to use such marks in commerce.

79.     Defendant has reproduced, counterfeited, copied, or colorably imitated Dow Jones's marks and used the same in commerce, including THE WALL STREET JOURNAL® and WSJ®, in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, and has further applied such reproductions, counterfeits, copies, and colorable imitations to advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

80.     Defendant's actions were and have been committed with knowledge that such imitations are intended to be used to cause confusion, or to cause mistake, or to deceive.

81.     In particular, Defendant intended to and, upon information and belief, did cause others to believe that it, its products and services, or its actions and commercial activities were

affiliated, connected, or associated with Dow Jones, or that they sponsored or approved of by Dow Jones, when in fact there was no such affiliation, connection, association, sponsorship, or approval.

82.     Defendant's conduct has been willful and in reckless disregard of Dow Jones's rights.

83.     Defendant's conduct is in violation of Dow Jones's rights under Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).

84.     Pursuant to 17 U.S.C. § 1117(a)-(c), Dow Jones is entitled to recover from Defendant the profits that Defendant obtained through its violations as well as Dow Jones's damages, treble damages and/or statutory damages along with its attorney's fees and costs.

85.     Further, Defendant's violations have caused, and, unless restrained by this Court, will continue to cause, irreparable injury to Dow Jones not fully compensable in monetary damages.

## FOURTH CLAIM FOR RELIEF
## UNFAIR COMPETITION, TRADEMARK INFRINGEMENT, AND FALSE ADVERTISING UNDER SECTION 45 OF THE LANHAM ACT

86.     Dow Jones incorporates and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

87.     Dow Jones is the owner of various trademarks and service marks, including THE WALL STREET JOURNAL and WSJ, among others.

88.     Defendant has, on or in connection with its goods or services, used in commerce reproductions or colorable imitations of Dow Jones's marks, including THE WALL STREET JOURNAL and WSJ, including in its advertising and promotional materials in a manner that incorrectly implies or suggests some affiliation, connection, or association between Defendant and Dow Jones, or that incorrectly implies or suggests that Defendant's products, services, or

commercial activities are sponsored or approved by Dow Jones.  Such uses are likely to cause confusion, or to cause mistake, or to deceive.

89.     Defendant has, on or in connection with its goods or services, used in commerce false or misleading descriptions of fact, or false or misleading representations of fact, including at least that users of its NICKLpass platform could legitimately and lawfully access Dow Jones publications through that platform, when in fact such uses were unauthorized.  Such uses in commercial advertising or promotion misrepresented the nature, characteristics or qualities of Defendant's or Dow Jones's goods, services, or commercial activities.

90.     Defendant has engaged in deceptive acts or practices in the conduct of its business, trade or commerce or in the furnishing of a service in this state.

91.     Defendant's actions were and have been committed with knowledge that such imitations are intended to be used to cause confusion, or to cause mistake, or to deceive.

92.     Defendant's conduct has been willful and in reckless disregard of Dow Jones's rights.

93.     Defendant's conduct is in violation of Dow Jones's rights under Section 45 of the Lanham Act, 15 U.S.C. § 1125(a).

94.     Pursuant to 17 U.S.C. § 1117(a), Dow Jones is entitled to recover from Defendant the profits that Defendant obtained through its violations as well as Dow Jones's damages, along with its attorney's fees and costs.

95.     Further, Defendant's violations have caused, and, unless restrained by this Court, will continue to cause, irreparable injury to Dow Jones not fully compensable in monetary damages.

## FIFTH CLAIM FOR RELIEF
## TRADEMARK DILUTION UNDER SECTION 45
## OF THE LANHAM ACT AND 54 PA. C.S.A. § 1124

96.     Dow Jones incorporates and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

97.     THE WALL STREET JOURNAL and WSJ are famous marks in that they are household names, known throughout the United States, that have been in use for many decades and that are distinctive and associated with Dow Jones as the source of its high quality publications, including *The Wall Street Journal*.

98.     Long after Dow Jones's (or its predecessors'-in-interest) foregoing marks became famous, Defendant began using such marks in commerce in a manner likely to cause dilution by blurring or dilution by tarnishment of the famous marks, including by harming or impairing Dow Jones's ability to control the use and reputation associated with its marks which signify its own services, including, for example, because Defendant's NICKLpass platform—including apps, scripts, browser extensions, or other software or code that it uses—is used and marketed for unlawful purposes.

99.     Defendant's conduct has been willful and in reckless disregard of Dow Jones's rights.

100.    Defendant's conduct is in violation of Dow Jones's rights under Section 45 of the Lanham Act, 15 U.S.C. § 1125(c) and under 54 Pa. C.S.A. § 1124.

101.    Pursuant to 17 U.S.C. § 1117(a), Dow Jones is entitled to recover from Defendant the profits that Defendant obtained through its violations as well as Dow Jones's damages, along with its attorney's fees and costs.

102.    Further, Defendant's violations have caused, and, unless restrained by this Court, will continue to cause, irreparable injury to Dow Jones not fully compensable in monetary

damages.

## SIXTH CLAIM FOR RELIEF
## UNFAIR COMPETITION

103.     Dow Jones incorporates and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

104.     Defendant misappropriated for itself the benefits belonging to, property rights of, and labors and expenditures of Dow Jones.

105.     Defendant's misappropriations produced and were for the purpose of obtaining a commercial advantage for Defendant.

106.     Defendant's actions were taken in bad faith and not justified or privileged.

107.     Dow Jones owns and has legally protectable rights in its marks and passwords, as previously alleged.

108.     Defendant's misuses of those marks and passwords is likely to create confusion among consumers and deprives Dow Jones of its rights.

109.     Defendant has engaged in false, deceptive, and misleading advertising, and deceptive selling practices.

110.     Defendant's actions have been in willful and reckless disregard of Dow Jones's rights.

111.     Defendant's acts have caused Dow Jones significant damage, not all of which is readily calculable, and have caused and, unless restrained by this Court, will continue to cause, irreparable injury to Dow Jones not fully compensable in monetary damages.

## SEVENTH CLAIM FOR RELIEF
## UNJUST ENRICHMENT

112.     Dow Jones incorporates and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

113.     By its conduct as alleged herein, Defendant was enriched at Dow Jones's expense, and it would be inequitable to permit Defendant to retain the benefits of its misconduct.

114.     Defendant's actions have been in willful and reckless disregard of Dow Jones's rights.

115.     Defendant's acts have caused Dow Jones significant damage, not all of which is readily calculable, and have caused and, unless restrained by this Court, will continue to cause, irreparable injury to Dow Jones not fully compensable in monetary damages.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff demands judgment in its favor and against Defendant as follows:

A.     That the Court enter an injunction, preliminarily and permanently, ordering that Defendant, and each of its agents, servants, employees, and all other persons in privity or acting in concert with them, be enjoined and restrained from:

    a.  accessing or providing others with means or information to access to any computer system containing any of Dow Jones's copyright-protected content;

    b.  obtaining, using, or trafficking in any passwords or similar information that restricts or regulates access to any Dow Jones computer;

    c.  using, manufacturing, or distributing any software or other means by which Dow Jones's access-protection measures, including its paywalls, may be circumvented or bypassed;

    d.  infringing, using, or exploiting any of Dow Jones's protected marks, or any confusingly similar marks, and from engaging in any conduct tending to weaken Dow Jones's rights in those marks or its reputation and goodwill, including but not limited to by the importation, manufacture, production, distribution,

circulation, sale, marketing, offering for sale, advertising, promoting, displaying, or otherwise disposing of any services or products not authorized by Dow Jones;

e.   making any false or misleading representation as to the source, sponsorship, approval, or certification of its goods or services by Dow Jones;

f.   making a false representation or using false descriptions, including words or symbols, as to affiliation, connection, association with Dow Jones or Dow Jones's or its authorized licensees' goods or services, and from offering any goods or services in commerce so falsely described;

g.   using any reproduction, counterfeit, copy, or colorable imitation of, or confusingly similar mark to Dow Jones's marks to identify any goods or the rendering of any services not authorized by Dow Jones;

h.   secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or services any books or records which contain any information related to the sale, marketing, offering for sale, advertising, promotion, or display of all unauthorized products or services that infringe Dow Jones's rights;

i.   committing or inducing any further breaches of the Dow Jones Terms of Use;

j.   engaging in unfair competition with Dow Jones and its authorized licensees;

k.   encouraging, inducing, or instructing any other person how to accomplish any of the foregoing; or

l.   effecting any assignment or transfer, or from forming or engaging in any new entity or association, or utilizing any other device, for the purpose of circumventing or otherwise avoiding the foregoing.

B.      That the Court issue an order directing Defendant to deliver up to Dow Jones all literature, advertisements, business forms, signs, computers, electronic media, and any other representations, regardless of form, and all means of making the foregoing, which are in, or come to be in Defendant's possession, custody, or control and which contain or bear any of Dow Jones's copyright material, passwords, or marks or any confusingly similar variants thereof, and further directing Defendant to notify its direct customers, agents, and representatives that its products and services are unlawful and were not authorized, sanctioned, or endorsed by, or otherwise connected with Dow Jones;

C.      That the Court issue an order directing Defendant to provide an accounting of all revenues and profits gained by it or any of its agents or affiliates while engaging in the acts complained of in this Complaint, and establishing a constructive trust for Dow Jones's benefit over all such profits;

D.      That the Court award Dow Jones the greater of all actual damages it has suffered and/or statutory damages to which it is entitled on each cause of action, along with all enhanced or treble damages and punitive damages that it may be entitled to recover;

E.      That the Court award Dow Jones prejudgment and post-judgment interest;

F.      That the Court declare this to be an exceptional case;

G.      That the Court award Dow Jones its costs, investigative expenses, and attorneys' fees; and

H.      That the Court award Dow Jones such other and/or further relief as is just and equitable.

## **JURY DEMAND**

Plaintiff demands a trial by jury for all claims and issues asserted in this Complaint that are so triable.

/s/Benjamin N. Simler
Lynn E. Rzonca
rzoncal@ballardspahr.com
Benjamin N. Simler
simlerb@ballardspahr.com
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
Telephone: 215.665.8500
Facsimile: 215.864.8999

*Attorneys for Plaintiff, Dow Jones & Company, Inc.*

Date:   March 21, 2022